# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN L. PENNINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-1026-F |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff John L. Pennington has back, neck, and shoulder impairments that limit him to light work, as well as a hand impairment that limits him, insofar as fine finger manipulation, to the use of the thumbs and forefingers on both his hands. Upon consideration of the application of Plaintiff for disability insurance benefits ("DIB") under Title II of the Social Security Act, the Commissioner determined that Plaintiff was not disabled for purposes of the Act because he could return to his past relevant work as a computer operations supervisor. As an alternative finding, the Commissioner determined Plaintiff was not disabled for purposes of the Act because he had acquired work skills from his past relevant work that are transferrable to the occupations of data recovery planner, quality assurance analyst, and technical support specialist, all of which offer jobs in significant numbers in the national economy.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for the former Commissioner as the defendant in this suit.

The issue on appeal is a straightforward one. All of the occupations mentioned by the Administrative Law Judge ("ALJ") who decided the case – computer operations supervisor, data recovery planner, quality assurance analyst, and technical support specialist – require the use of a computer and, therefore, presumably, the ability to use a keyboard. But the record does not demonstrate proper consideration of whether Plaintiff, who is largely limited to the use of a thumb and forefinger on each hand, could use a keyboard to the extent required by those occupations (or, for that matter, whether Plaintiff could use some functional equivalent of a keyboard). Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB and supplemental security income ("SSI") on September 10, 2009. R. 21.[2] Following preliminary administrative denials of his application, Plaintiff at his request appeared for a hearing before an ALJ on March 24, 2011. *Id.* at 21, 38-64. At the hearing, Plaintiff amended his alleged disability onset date from September 30, 2009 to September 30, 2008. *Id.* at 21, 43. After the hearing, Plaintiff withdrew his application for SSI. *Id.* at 21. The ALJ issued an unfavorable decision on September 13, 2011. *Id.* at 18-32. Plaintiff's request for review by the SSA Appeals Council was denied; thus, the decision of the ALJ is the final decision of the Commissioner.

---

[2] References to the administrative record, Doc. No. 14, are as "R. ___."

*Id.* at 1-6; *see* 20 C.F.R. § 404.981.

Thereafter, Plaintiff commenced this appeal. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b). The Commissioner has answered and filed the administrative record and the parties have briefed their positions. Thus, the matter is now ready for decision.

THE ADMINISTRATIVE DECISION

The ALJ followed the SSA's five-step sequential evaluation process to determine whether Plaintiff was disabled and therefore entitled to DIB. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since on or before Plaintiff's amended alleged disability onset date. R. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; thoracic spine pain – status post compression fracture; osteoarthritis; bilateral shoulder bursitis; and a history of coronary artery disease – status post coronary artery bypass surgery. *Id.* at 24. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except the claimant is able to occasionally stoop to bend forward at the waist; occasionally kneel to bend at the knees to come to rest on the knees; and

> occasionally crouch to bend downward by bending the legs and spine. The claimant's fine finger manipulation is limited to the thumbs and index fingers.

R. 24-25. In light of this finding and the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a computer operations supervisor. *Id.* at 29.

The ALJ's step-four finding was sufficient to conclude that benefits should be denied; however, the ALJ alternatively considered what the result would be if it were assumed that Plaintiff could *not* return to his past relevant work. For step five, the ALJ – applying the Medical-Vocational Guidelines (the "Grids")[3] as a framework and relying on the testimony of the VE – determined that, in view of Plaintiff's age, education, work experience, acquired skills, and RFC, there are other jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* at 29-30. The occupations specifically mentioned by the ALJ as offering jobs in significant numbers were: data recovery planner, quality assurance analyst, and technical support specialist. *Id*. at 30-32.

Based on his step-four and alternative step-five conclusions, the ALJ found that Plaintiff had not been disabled within the meaning of the Act at any time during the relevant time period. *Id*. at 32. Accordingly, Plaintiff's application for DIB was denied. *Id.*

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169

---

[3] *See* 20 C.F.R. pt. 404, subpt. P, App. 2.

(10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises three claims of error on appeal. First, Plaintiff contends the ALJ erred at step four by accepting, without further analysis, the VE's testimony that Plaintiff could perform the work of computer operations supervisor. Pl.'s Br., Doc. No. 17, at 15, 16-22. Plaintiff next contends that the ALJ erred at step five by relying on the VE's testimony that Plaintiff could perform the occupations of data recovery planner, quality assurance analyst, and technical support specialist, despite such testimony being inconsistent with published standards regarding the requirements of the identified

occupations. *Id.* at 15, 22-27. Finally, Plaintiff contends the ALJ erred in evaluating the weight to be given to the opinion of Plaintiff's treating physician. *Id.* at 15, 27-35.

ANALYSIS

**I.     Whether the ALJ erred in his step-four and step-five determinations by failing to properly consider the effect of Plaintiff's fingering limitations**

A proper step four analysis consists of three phases:

(1)   a determination of the claimant's RFC, including any physical and mental limitations;

(2)   a determination of "the physical and mental demands" of the claimant's past relevant work; and

(3)   a determination of "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In *Winfrey*, the Tenth Circuit reversed the decision of the Commissioner because the ALJ, in making the phase-two and phase-three determinations, effectively delegated those determinations to a VE. *Id.* at 1024-25. The Tenth Circuit explained that, while an ALJ may rely on vocational information supplied by a VE, the ALJ may not abandon his or her role as fact finder to the VE. *Id.* As part of this obligation, the ALJ must articulate the factual findings underlying his or her determinations in a way that would allow an appellate court to review whether the findings are supported by substantial evidence. *See id.* at 1025 (stating when "ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review"). The distinction between delegation and reliance is one of substance not form. In *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003), the Tenth Circuit

6

clarified that an ALJ will not be found to have delegated his role merely by quoting the testimony of a VE in the course of articulating the ALJ's own findings. *Doyal*, 331 F.3d at 761.

The facts here are more analogous to *Winfrey* than to *Doyal*. The ALJ did not articulate any phase-two findings regarding the demands of Plaintiff's past relevant work, specifically whether the occupation of computer operations supervisor required ten-finger manipulation of a keyboard. Likewise, the ALJ did not articulate any phase-three findings regarding whether Plaintiff's fingering limitations would permit him to perform the occupation of computer operations supervisor.[4] The absence of articulated factual findings on these questions prevents meaningful review of the ALJ's step-four determination and is, therefore, error.

An error at step four is harmless if followed by an alternative and non-erroneous determination at step five that jobs exist in significant numbers in the national economy that a claimant could perform. *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994). Here, however, the ALJ's step-five determination is called into question by the fact that the occupations he relied on all require – according to the descriptions of those occupations in the *Dictionary of Occupational Titles* ("DOT") – the ability to use a computer, and therefore a keyboard, but there is no articulated analysis in the record, by the ALJ or the VE, of whether Plaintiff had that ability.

---

[4] The VE did not testify regarding the fingering demands of Plaintiff's past relevant work, but merely stated her conclusion – in response to a hypothetical involving a limitation of fine finger manipulation to the thumbs and forefingers of both hands – that Plaintiff could perform the job of computer operations supervisor. R. 57-60.

At step five, the Commissioner bears the burden of showing that a significant number of jobs exists in the national economy that the claimant could perform, in light of the claimant's RFC, age, education, and work experience. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). To find this burden satisfied,

> the ALJ must find that the claimant retains a particular exertional capacity, decide whether the claimant has acquired transferable skills, identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies.

*Id*. at 1088-89. "All of these findings must be supported by substantial evidence." *Id*. at 1089.

Generally, at step five, the ALJ may broadly rely on VE testimony as substantial evidence in support of a finding as to "'the specific occupations in which [a claimant's work skills] can be used.'" *Id.* (quoting 20 C.F.R. § 404.1566(e)); *see also Winfrey*, 92 F.3d at 1025 (stating VE's role is broader at step five than step four). An exception occurs if it appears that the skill requirements used by a VE for an identified occupation differ from the skill requirements for that occupation as set forth in the DOT. In that case, the ALJ must elicit enough evidence to assess whether there is a conflict and, if so, whether reliance on the VE's expert opinion is reasonable. *Haddock*, 196 F.3d at 1089-92 (holding "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony [by a VE] before the ALJ may rely on the expert's testimony as substantial evidence"). To require otherwise would "relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five." *Id*. at 1090.

Here, there is such a conflict. Under the descriptions set forth in the DOT, each of the three alternative occupations identified by the VE and accepted by the ALJ – namely, data recovery planner, quality assurance analyst, and technical support specialist – requires the use of a computer and, therefore, on its face, a substantially unrestricted ability to use a keyboard. However, the VE's testimony that Plaintiff could perform these occupations was made under a hypothetical assumption that Plaintiff would be limited to the use of his thumbs and forefingers insofar as fine finger manipulation. R. 60-61. This testimony implies that the cited occupations require something less than the substantially unrestricted ability to use a keyboard.

That is an apparent conflict that required the elicitation of evidence and articulation of a finding, rather than naked reliance on a conclusory opinion by the VE. There was, however, no testimony by the VE or discussion by the ALJ of whether Plaintiff could use a keyboard, or perform one or more of the cited occupations using the functional equivalent of a keyboard, or perform one or more of the cited occupations using only his thumbs and forefingers. Absent such testimony or findings, it is impossible to review whether the ALJ's conclusion that Plaintiff could perform the cited occupations was supported by substantial evidence. Upon remand, the ALJ should elicit evidence and articulate findings regarding the specific demands of the cited (or other) occupations, as well as whether Plaintiff can perform those (or other) occupations given his limited fingering ability.

## III. Whether the ALJ erred in evaluating the weight to be given to the opinion of Plaintiff's treating physician

Plaintiff challenges the ALJ's evaluation of the opinions of treating physician Scott Dycus, M.D. *See* R. 28. Dr. Dycus completed an assessment on April 20, 2011, labeled "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)." R. 463-465. Dr. Dycus concluded that Plaintiff had physical limitations beyond those ultimately found by the ALJ in this case. *See id.*

When considering the opinion of an "acceptable medical source," such as a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 416.927(a)(2), (c)(2). The opinion of a treating physician must be given controlling weight if it is *both* well supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying Social Security Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 416.927(c)(2). "An ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins*, 350 F.3d at 1300 (alteration and internal quotation marks omitted). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5).

Here, the ALJ assigned "minimal weight" to Dr. Dycus' assessment of Plaintiff's physical limitations. R. 28. As explanation, the ALJ states that the limitations found by Dr. Dycus are not reflected in his contemporaneous treating records and, therefore, appear to be "based upon the claimant's subjective statements." *Id*. Upon remand, further explanation by the ALJ should be provided. Specifically, the ALJ's evaluation of the weight to be given to Dr. Dycus' opinion should be sufficiently specific to make clear that he considered the factors set forth in 20 C.F.R. § 404.1527(c), as well as the objective medical conditions observed by Dr. Dycus.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 4, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 18th day of February, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE